DUCKER, JUDGE:
Claimant, Norma Lee Lynn, also known as Norma Lee Martin, alleges damages in the sum of $250,000 by reason of injuries received and medical expenses incurred by her as the result of a collision of the automobile, in which she was riding, with a concrete pillar alongside State Highway 61, known as the South Side Expressway adjacent to the parking lot at the Chesapeake and Ohio Railway Station in Charleston, West Virginia, at about 12:30 a.m. on May 17th, 1969.
The evidence shows the respondent was at the time of the accident engaged in construction and converting the South Side Expressway from a two lane highway into a four lane road, making two lanes for traffic each way, and that the claimant was a passenger in a 1961 Chrysler automobile driven by Robert Eugene Martin, and on the evening of May 16th, Martin after having been at work for approximately fifteen hours drove to their jointly occupied home in Kanawha City (East Charleston), reached his home about eleven o’clock that night, and then with claimant drove through the South Side Expressway and on to a drive-in on the Sissonville Road (Route 21) to get something to eat, and thereafter they returned to the Expressway after passing through the intersection of the same with Thayer Street. They proceeded eastward on the Expressway to about the west end of the C & O parking lot, and while passing or about to pass a tractor-trailer truck traveling in a westerly direction the automobile collided with a concrete pillar adjacent to the curb of the eastbound traffic lane, heavily damaging the automobile which burst into flames and seriously injuring the claimant.
*128 The claimant bases her claim, in substance, upon the allegation that the Department of Highways was negligent in not requiring the Appalachian Electric Power and the Contractor, the Mountain State Construction Company, to remove or adequately safeguard with lights or warning devices the concrete pillars abutting the highway from which pillars the electric lights therein had been removed, that the traveled portion of the highway filled with holes and out of repair created a dangerous hazard to the driving public, and that proper warning devices were not maintained to protect the public, all amounting to such negligence of the Department of Highways in all such aspects of the case as to be the cause of the accident.
The respondent filed a motion to dismiss the claim on the ground that the contractor had agreed to hold the respondent harmless from all claims relating to the road construction work, but this Court denied the motion on the basis that the State could not by any agreement avoid the consequences of a non-delegable duty.
The claimant entered into a settlement in a suit in the Common Pleas Court of Kanawha County on this claim as to the liability of the Mountain State Construction Company, the Chesapeake and Ohio Railway Company and the Appalachian Power for the total sum of $27,000, but left pending in said Court her claim against the City of Charleston. The settlement was only by way of compromise and did not admit liability on the part of any of the parties, expressly denying the same. These cases do not affect the question of liability of the respondent, except that the amount of the settlement would be a credit upon any award made in this case.
In considering the question of liability on the part of the respondent in this case, we will review the facts as to the several aspects of the claimant’s basis of her claim.
It is undisputed in the evidence that the car was being driven between forty and fifty miles an hour, sometimes stated as being between forty-five and fifty. Martin, the driver of the car, said he did not see any speed or danger signs on the highway. The evidence of the respondent is positive and unequivocal that there were not only 25 roñe an hour signs but also signs showing construction ahead, 2000, 1500 and 1000 feet respectively. The witness, Martin, also testified he drove through this section of the highway three or four times a week and knew of the construction work being done at the *129 place of the accident. He said he never saw the barrels which divided the area for the construction of an additional two lanes for westbound traffic. While it is not probable, it is possible that the age of the car and the reputation of Martin in his driving may have been factors worth consideration in the matter, namely, that the car had been purchased for $150, and had been driven seventy to seventy-five thousand miles, and the driver had had several experiences in other accidents involving reckless driving and “hit and run” charges.
The claimant bases her case primarily upon her allegation that there was a steel grated catch-basin or drain along the paved part of the road into which the right front wheel of the automobile in which claimant was riding dropped down sufficiently to throw the automobile against the curb of the C & O parking lot property and then against a concrete pillar adjacent to the curb. This catch-basin was described as being a 15 inch drain according to the plans and specifications, and otherwise as four or five inches deep by one witness and by another as 3-1/2 inches deep at one end and 5-1/2 inches at the other. The picture exhibit of the catch-basin shows that the road paving at both ends of the catch-basin was somewhat slanted and not perpendicular, thus lessening the impact of a wheel passing over the catch-basin. The catch-basin drop in road could hardly be considered as sufficient to cause the right front wheel of the car to change its course in the road. Depressions in the road such as we have here are encountered in driving and usually without noticeable incident.
The concrete pillar, which was removed after the accident, was described as being 18 to 20 inches square and 3-1/2 feet high, and 2-3/8 to 2-3/4 inches from the edge of the travel portion of the highway. These measurements were made from holes left after the pillar was removed, and are subject to serious question, as the road adjacent thereto was an open traveled highway. No satisfactory evidence of the alleged obstruction was offered. It is inherent in the fact that this was an open, much traveled highway, that the pillars at that location were not in the absence of better proof dangerous obstructions. Claimant’s picture Exhibits 7A and 7B show an additional approximately one foot of hard-surfaced strip of roadway between the usually traveled part of the roadway and the curb at the location of the catch-basin. The width of the road was 10 feet on each side of the center lane, whether that included the additional foot is not clear. The catch-basin was described as being 75 to 80 feet, the exact dis *130 tance according to the plans being 84 feet, westerly of the concrete pillar. All of this was approximately 300 yards east or above the Thayer Street intersection.
A quite relevant fact is that immediately prior to the accident and almost simultaneously therewith, Martin saw a tractor-trailer truck traveling in the westbound lane, which he described as having the tire of its front left wheel in and on the center line of the highway at about the time of the passing of his car and the tractor-trailer. How much the main part of the tractor-trailer extended over the wheels is not shown. The width of Martin’s car was estimated at seven feet. Martin said he did not swerve away from the truck but his evidence in this particular is not very satisfactory because the pictures of his car show great impact on the front right-hand side on his car, indicating that there must have been considerable turning to the right. If he had stayed in the roadway adjacent to the curb, there would have been, and probably only, a scraping of the side of his car. Martin further testified that when he approached the truck and saw the truck’s left front wheel on the center line of the road, he said that between the tractor-trailer and the curb line “I didn’t have hardly any room”. There is no evidence in regard to who drove the tractor-trailer truck, who owned it or where it went from the scene of the accident, and consequently whether the driver knew there had been an accident.
It seems claimant bases her case on the assumption that the condition of the catch-basin was such as to throw the car against the curb and the pillar 84 feet away. The testimony of Martin who simply said “All of a sudden I hit a hole in the road or something. I don’t know exactly what it was. It threw me into the curb. I had a sudden twist, real fast” and that he didn’t know he had hit a drain. Upon his later return to the scene of the accident about a week later he concluded it was the catch-basin that he hit and that it caused him to swerve over to the curb, not over the curb. A real point is how the car struck the pillar. As there was no other witness to the accident except claimant, who remembers nothing, the evidence of Martin in this respect is more an assumption than a fact, especially so when considered with the evidence as to proximity of the tractor-trailer passing him at that time.
Considering further the matter of the catch-basin, it appears not to be such a defect as would cause a car traveling thereover to swerve off the road to the curb of the road and strike an obstruction eighty- *131 four feet ahead on the side of the road and off the paved section of the highway. Had it done so, it would have had to jump the curb to do the apparent damage to the car, and there most likely would have been, we think, a more direct front collision instead of a front right-side collision. As has been indicated, if the car was not thrown out of the traveled roadway, a collision would most probably have been a shearing off and scraping by the pillar of the right side of the car. Whatever the fact was, the speed limit was, we think, definitely proved to be twenty-five miles an hour in the construction area, and Martin ignored the limitation and drove approximately twice that speed. He was well acquainted with the road. It does not seem reasonable to believe that the catch-basin could have caused any damage to a car passing over it at twenty-five miles per hour, especially when the only obstacle allegedly in the path was the concrete pillar 84 feet away.
The pictures, admitted as exhibits, show, and the testimony of Police Officer Carl Bender confirms the fact that the automobile struck the concrete pillar on the “front part of the automobile toward the right side,” and at an angle of “between 35 to 45 degrees using the curb as a base”. With the car striking the pillar eighty-four feet away from the catch-basin it does not seem reasonable to conclude that the catch-basin had caused the car to follow the curb for that distance. However, such an angle would be consistent with a swerve of the car to the right when passing the tractor-trailer. A picture of the car showed that the tire on the right front wheel had not been deflated by striking either the catch-basin or the pillar.
The claimant has incurred medical and hospital expenses in a sum of over $13,000, but since we are concluding to disallow the claim, there is no need for our consideration of such matter.
There are many details which have not been mentioned in this opinion as we consider these not pertinent enough or relevant to the real question of liability, which we must determine in this case.
The claimant has suffered irreparable damages in her suffering and bodily injuries and we are cognizant of the terrible tragedy in this case, and we naturally regret that according to law we cannot obey the inherent human impulse to make a substantial award. Our decision is required to be on a sound legal basis and an award here must depend upon the question of liability, just the same when the State is defendant as when an individual is.
*132 From the evidence in this case, we are not convinced that either the catch-basin or the concrete pillar were such objects as created hazards dangerous to the public traveling through this section of the highway, which area was shown as limited to a speed of twenty-five miles an hour by many warning signs, and in this case by the personal knowledge of driver. Nor are we convinced that the collision of the car with the concrete pillar was the result of the condition of the catch-basin or the proximity of the pillar to the traveled portion of the highway, but we conclude that claimant’s damages have been occasioned by either the negligence of the driver of the car or by someone or something other than alleged in her petition. We do not think there was actionable negligence on the part of respondent. We are, therefore, of the opinion to, and do hereby wholly disallow the claim and make no award herein.
Claim disallowed.